90 January 28, 2013 No. 13

IN THE OREGON TAX COURT
REGULAR DIVISION

DIRECTV, INC.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4939)

Plaintiff (taxpayer) appealed Defendant (the department)'s assessment under the central assessment scheme, arguing that taxpayer's business was not subject to central assessment. Taxpayer argued that according to recent case law (the court's opinion in *Comcast*), a company is not centrally assessable if data transmitted to customers is either data created by a taxpayer or data for which a taxpayer has obtained the right to make transmission to a customer. The department argued that central assessment of taxpayer was proper because taxpayer did not own the content it distributed and therefore the facts of this matter fell outside the decision in *Comcast*. The department argued further that certain contracts that taxpayer had with phone and cable companies constituted use by taxpayer of property of companies that were subject to central assessment, concluding that this made taxpayer subject to central assessment. Granting taxpayer's motion, the court ruled that the facts in this matter were not discernibly different from those in *Comcast*, and that use of property of others, even if the others happen to be centrally assessable, does not render the company using the property in question to be subject to central assessment.

Oral argument on cross-motions for summary judgment was held November 20, 2012, in the courtroom of the Oregon Tax Court, Salem.

Scott G. Seidman, Tonkon Torp LLP, Portland, filed the motion and argued the cause for Plaintiff (taxpayer).

Marilyn J. Harbur, Senior Assistant Attorney General, Department of Justice, Salem, filed the cross-motion and argued the cause for Defendant (the department).

Decision for Plaintiff rendered January 28, 2013.

**HENRY C. BREITHAUPT, Judge.**

### I. INTRODUCTION

This matter is before the court on cross-motions for summary judgment. The factual record is comprised of a Stipulation of Facts and other submissions by the parties.

## II.  FACTS

The basic facts are that Plaintiff (taxpayer) is in the business of providing video and audio programming to customers. This is accomplished in three phases: (a) content licensing; (b) package assembly; and (c) signal distribution.

### A.  *Content Licensing*

In order to provide video and audio services to subscribers, taxpayer must first contract with content providers to obtain a license to distribute their content.

In most but not all cases, taxpayer pays a fee based in part on the number of its subscribers to obtain a license to distribute video and audio programming from content providers. These content providers include national television networks (such as ABC, CBS, FOX, and NBC), local television stations (such as KOIN, KGW, and KATU), and cable television networks (such as CNN, ESPN, HBO, and Showtime).

The agreements between taxpayer and the content providers grant taxpayer the nonexclusive right to distribute video and audio programming to taxpayer's subscribers. A list of representative sample agreements and the contract documents (with pricing information redacted) have been filed in this case.

Taxpayer makes payments to content providers at market rates for the rights to distribute video and audio programming to taxpayer's subscribers.

### B.  *Package Assembly*

Once the content has been licensed, taxpayer assembles it into defined subscriber packages.

The assembly process occurs at broadcast and uplink centers that are located outside the state of Oregon.

At the broadcast and uplink centers, the content is compressed, remixed into groups of channels to match the size of satellite transponders, encrypted and modulated so that it can be broadcast to orbiting satellites on a specified radio frequency.

C.  *Signal Distribution*

Once the packages have been fully assembled at the broadcast and uplink centers, they are ready for distribution to taxpayer's subscribers.

From the broadcast and uplink centers, taxpayer transmits an encrypted signal to a fleet of satellites that are in orbit above the earth.

The orbiting satellites receive the signals and transmit them back down to earth using designated portions of the microwave radio spectrum.

Taxpayer's subscribers can then access the signals using a dish-shaped antenna that is typically mounted near the subscriber's home or business.

Once received by the subscriber's antenna, the signal is relayed to a receiver (also known as a "set-top box") that is typically located inside the subscriber's home or business.

The set-top box descrambles the signal and allows it to be viewed or heard by the subscriber.

## III.   ISSUE

The issue in this case is whether taxpayer is properly assessed and taxed as a centrally assessed company pursuant to ORS 308.505 to 308.665.[1]

## IV.   ANALYSIS

Taxpayer argues that this case is governed by the Opinion of this court in *Comcast Corp. v. Dept. of Rev.*, 20 OTR 319 (2011). In particular, taxpayer relies on the statement in the *Comcast* opinion to the effect that a company is not centrally assessable if data transmitted to customers is either data created by a taxpayer or data as to which a taxpayer has obtained the right to make transmission to a customer.

Defendant Department of Revenue (the department) argues first that *Comcast* was wrongly decided. The

---

[1]  All references to the Oregon Revised Statutes (ORS) are to the 2011 edition.

court declines the invitation of the department to revisit its opinion in *Comcast*.

The department then seeks to establish that the facts for taxpayer are different from those in *Comcast*. As to this argument the department primarily points to provisions of the content licensing agreements present in this case to establish that taxpayer does not own the video and audio content being transmitted. Pointing to provisions of the licensing agreements, the department argues that taxpayer does not own the content and therefore falls outside the decision in *Comcast*. The department, however, ignores that portion of the *Comcast* decision which speaks of data as to which the taxpayer has "obtained the right to make transmission to a third party." *Comcast*, 20 OTR at 333.

It is true, as the department points out, that the content licensing agreements impose some obligations or limitations on taxpayer. These are, however, in the nature of obligations to make a certain level of use of the rights and to do so in a particular way. The provisions in no way detract from an ultimate finding that taxpayer here has obtained the right to make transmission of content to a third party using taxpayer's technology.

The terms of the content licensing agreements in this case do not cause the *Comcast* analysis to be inapplicable.

The department then points to certain contracts that taxpayer has with phone and cable companies. The department appears to argue that these contracts constitute use by taxpayer of property of companies that are concededly subject to central assessment. The department appears to then conclude that this makes taxpayer subject to central assessment.[2]

It is true that, *if* a company is subject to central assessment, the use of property of others is considered in the assessment process. *Cf.*, ORS 308.505(9)(a). However, such use of property of others, even if the others happen to

---

[2]  In some cases it appears that the department confuses use of cable or phone properties by customers of taxpayer with use of such properties by taxpayer. In neither case is such use a factor in determining, in the first instance, whether taxpayer is subject to central assessment.

be centrally assessable, does not render the company using the property in question to be subject to central assessment. This conclusion is established by the statutory definitions of "company" in ORS 308.505(8) which is not written in terms of what property is used by a centrally assessed company. Nothing about the use by taxpayer or its customers of cable or internet properties owned and operated by others helps the department.

This court adheres to its Opinion in *Comcast* as to the legal principles applicable and finds no basis on which to reach a different result given the facts of this case.

## V.   CONCLUSION

The motion of taxpayer is granted and the cross-motion of the department is denied. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment is denied.